IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| David B. Thompson, | Case No. 4:18cv2103 |
| Petitioner, | |
| -vs- | JUDGE PAMELA A. BARKER |
| | Magistrate Judge George Limbert |
| Warden Brandeshawn Harris, | |
| Respondent | MEMORANDUM OPINION AND ORDER |

This matter is before the Court upon the Amended Report & Recommendation ("R&R") of Magistrate Judge George Limbert (Doc. No. 13), which recommends that the Petition for Writ of Habeas Corpus filed by David B. Thompson pursuant to 28 U.S.C. § 2254 be dismissed as non-cognizable. Petitioner has not filed formal Objections but did raise several substantive arguments in a pleading captioned "Motion to Strike Report & Recommendation," which the Court construes as objections and will address herein. (Doc. No. 14.)

For the following reasons, the Court declines to accept the Amended Report & Recommendation (Doc. No. 13.) This matter is re-referred to the Magistrate Judge as set forth herein.

**I.      Summary of Facts**

Thompson's habeas petition challenges the constitutionality of his conviction and sentence for aggravated murder and other charges in the case of *State v. Thompson*, Trumbull County Court of Common Pleas Case No. Case No. 2014 CR 00319. The state appellate court summarized the facts underlying Thompson's conviction as follows:

> {¶ 9} The shooting incident giving rise to the indictment occurred at 207 Atlantic Street in Warren, Ohio, on April 7, 2014. A company called Pro Flooring is on the first floor of the building. The second floor houses three apartments. Roger Morgan

and John Stiffler moved into Apartment B about one to two weeks before the incident. John Taylor had resided in Apartment A for approximately two years; appellant had resided in Apartment C for about the same length of time. Although pets were not generally permitted in the apartments, appellant had permission from the landlords to keep his companion/service dog, which had been assigned to him through the Veteran's Administration 15 years earlier.

{¶ 10} The following witnesses testified for the prosecution: Jason Polan, John Stiffler, John Taylor, Roger Morgan, Officer Michael Lynch, Lieutenant Martin Gargas, and Officer Thaddeus Stephenson. Appellant testified in his own behalf and called no other witnesses.

{¶ 11} Jason Polan, age 39, testified that he performs maintenance for Pro Flooring and the second-floor apartments. Polan stated he had multiple verbal confrontations with appellant during this time regarding late rent and other infractions: for example, he told appellant to remove an extension cord appellant was using to "borrow electricity" from Taylor in Apartment A. Polan also testified that he "must have" seen appellant's dog during this time, but he never had any contact with the dog.

{¶ 12} Polan testified that he arrived at the Atlantic Street building on the afternoon of April 7, 2014, with mailbox keys he had made for the new tenants in Apartment B (i.e., Morgan and Stiffler). He took the mail and the keys upstairs to Apartment B and knocked on the door. Polan testified that Morgan opened the door halfway, and he could see there was a dog in the apartment. He stated he did not recognize that it was appellant's dog, and he asked Morgan, "Who the F's dog is that?" He testified that "the door opened the rest of the way and I seen a gun come at me and shot at me." The bullet did not strike Polan. Polan stated appellant was holding the gun and did not say anything. He first testified appellant was about two arm lengths away from him but later, during cross-examination, stated appellant was about eight feet away from him. He testified that after the gunshot, "I grabbed the barrel of the gun and wrestled [appellant] into the apartment and forced him to the ground and took the gun away from him." Polan's hand was broken in the struggle.

{¶ 13} Polan testified he left the apartment, and appellant followed him down the stairs asking for his gun back. Polan then drove to the Warren City Police Department and turned in the gun; he told the officers he was not sure whether appellant pulled the trigger or whether the gun went off when he knocked the gun to the side in the struggle. His testimony, however, was that appellant "definitely shot at me before I grabbed the gun," and that Polan "didn't even see the gun until it went off." He testified that the narrative he told the police at the station was different from his trial testimony because he was nervous, surprised, anxious, and "everything wasn't really clear to me at that time." Polan also testified that he carries a handgun, for which he has a concealed carry permit, but did not pull it out during the altercation with appellant.

2

{¶ 14} Roger Morgan, age 52, testified he had known appellant for about one year—prior to moving into Apartment B with John Stiffler. He testified that appellant was at their apartment on the afternoon of April 7, 2014, using their electricity to charge his computer. Morgan said he received a phone call from Polan about the mailbox key while appellant was there. Morgan testified that when appellant heard Polan was coming to the building, appellant said he was going to grab his gun because "they had a beef going on or whatever." Morgan went with appellant to appellant's apartment; Morgan saw the gun in Apartment C but did not see appellant bring it back to Apartment B. According to Morgan, appellant stated that if Polan "comes up, I'm going to shoot him." Morgan then walked to a nearby convenience store to get a soda for himself and a beer for appellant. Neither he nor Stiffler were drinking that afternoon, he testified.

{¶ 15} After he had returned, Morgan heard Polan arrive in the parking lot. Morgan stated appellant was sitting on the floor in the middle of the apartment. Morgan testified that he went halfway down the stairs in an attempt to stop Polan from coming up to the apartment, but he was too late. When Polan got to the top of the stairs, appellant's dog came out into the hallway, and Polan asked whose it was. Morgan said, "You know whose dog it is. It's [appellant's] dog." Polan gave Morgan the mail, and Morgan turned to enter the apartment and shut the door: "By the time I walked in the apartment, [appellant] was coming past me so I went around [appellant], you know, this way and then I hear the shot." Morgan's back was to them, and he did not see appellant with the gun before the shot. He had, however, seen the gun on the coffee table before Polan came up the stairs. He stated there was a scuffle into one of the bedrooms, and Polan was yelling at appellant to give him the gun. Polan eventually got the gun and walked out; appellant followed behind asking for his gun back.

{¶ 16} Morgan testified that when appellant was later arrested, appellant gave Morgan the keys to his apartment; Morgan then gave them to appellant's "wife—or his ex-wife or whoever it was." When appellant was released on bail, he accused Morgan of taking many items from his apartment. Finally, Morgan testified that he is on medication that affects his judgment and memory: two kinds of sleeping pills, anti-anxiety medication, and muscle relaxers.

{¶ 17} John Stiffler, age 73, testified that he and Roger Morgan had recently moved into Apartment B and had known appellant only for about a day or two. On April 7, 2014, appellant was in their apartment visiting Morgan, as the two of them had become friends. Stiffler testified that appellant brought his dog and a beer, and he sat down on the floor; Stiffler was in the kitchen when appellant came in. He said that neither he nor Morgan were drinking beer. Stiffler testified that Morgan got a phone call from Polan regarding the mailbox key.

{¶ 18} After appellant had been there for about an hour, Stiffler testified, Polan knocked on the door; Morgan opened the door, Stiffler was in a rocking chair, and

3

appellant was still on the floor. He testified, "[Polan] come in and said here's the key to the mailbox. [Morgan] took the key, went and sat down on the other side of me and then [Polan] asked who in the hell does the dog belong to." According to Stiffler, appellant then turned around and grabbed a gun from under a floral arrangement on the coffee table, stood up, and shot without saying anything. The bullet hit the door of Apartment A across the hall. Stiffler testified that Polan then came in the apartment and grabbed appellant, they scuffled into Stiffler's bedroom, and then stopped. Neither one said anything, and Polan left with the gun.

{¶ 19} Stiffler testified he did not observe anything from Polan that would have been considered a threat. He also testified he did not see appellant enter the apartment with a gun, and he did not know whether appellant left and came back with a gun. At one point in his testimony, Stiffler indicated he could not remember certain details due to his age.

{¶ 20} John Taylor, age 55, testified he had lived in Apartment A for approximately two years. On April 7, 2014, he was in his apartment and heard an "explosion"; he looked out the door, and the hallway was "full of smoke out there from the gun." He saw appellant and Morgan, and then Polan came running out of Apartment B saying, "he tried to shoot me." Taylor stated appellant waited in Apartment B until the police arrived. Taylor testified that Polan yelled at appellant a lot and that Polan threatened to evict Taylor if he did not disconnect the extension cord running to appellant's apartment. Finally, Taylor testified that Polan always carried a gun; he would pull it out, flash it around, and do tricks with it.

{¶ 21} Officer Lynch, with the Shenango Township Police in Lawrence County, Pennsylvania, testified regarding the gun involved. He stated the same gun was stolen from a house in New Castle in 2012: a .44 caliber F.LLI Pietta single-shot ball and cap black powder pistol.

{¶ 22} Lieutenant Gargas, with the Warren City Police Department, testified that he spoke with Polan briefly when he turned in the gun. The lieutenant stated it was a single action gun, meaning it must be cocked before pulling the trigger in order to fire it. The gun was loaded when it was turned in and disassembled at the police station. Lieutenant Gargas also testified that he wrote out a "recovered firearm form that we send to BATF through our liaison officer describing persons and addresses attached to a weapon with a brief narrative." He testified that his brief written narrative was as follows: "Polan came to HQ. Stated [appellant] pointed the weapon at him and Polan grabbed it. A shot was fired. Polan got the gun away from [appellant] and came to HQ, headquarters, gun stolen from Shenango Township."

{¶ 23} Officer Stephenson, a patrolman with the Warren City Police Department, testified that he spoke with Polan at the station but did not take a written or recorded statement. Instead, he later wrote out a summary of their conversation based on notes

4

he took while they were speaking. Officer Stephenson testified that Polan was "shaken up" and "his voice was a little shaky." He stated, "it almost appeared he was in shock, his voice was trembling. Just very nervous. Freaked out, I guess you could say." He testified that his report includes the following statement: "The gun then fired (Polan stated to me that he didn't know if Thompson pulled the trigger or if the gun went off because he had hit the gun hand to the side) sending a round into the door of Apartment A."

{¶ 24} Officer Stephenson arrested appellant in Apartment B and transported him to the station; he testified that he did not Mirandize or question appellant. On cross-examination, defense counsel asked Officer Stephenson a series of questions regarding his report of the conversation he had with Polan. Following each question, the officer was asked if he had written that statement down "verbatim," to which he responded he had. On redirect, the prosecutor elicited from Officer Stephenson that he did not know the meaning of "verbatim" and that the only actual quote in his entire summary related to Polan's question to Morgan about the dog.

{¶ 25} Appellant, age 55, testified in his own behalf. He stated he had been living in Apartment C for approximately two years and did not know Stiffler or Morgan before they moved in. The landlord allowed appellant's dog to live with him, who was certified by the Veteran's Administration as a companion animal for anxiety and depression; he owned the dog for 15 years. Appellant testified he had known Polan for about six months prior to the incident from seeing him around the building; he testified that Polan had seen appellant with his dog and had seen the dog in Apartment C. He opined that Polan was arrogant and threatening and stated Polan always kept his handgun in plain sight.

{¶ 26} Appellant testified that on the afternoon of April 7, 2014, he went to Apartment B with his dog, cane, computer, and charging cord; Morgan and Stiffler were both drinking beer. The three of them discussed appellant's collection of Civil War memorabilia, and appellant offered to show them his Civil War replica pistol. Appellant testified the pistol was given to him by the boyfriend of a previous tenant as collateral for a $50 loan; this occurred about seven months prior, and the man had not returned to claim the pistol. Appellant stated he retrieved the pistol from his apartment alone, brought it back to Apartment B, and set it on the coffee table while he waited for his computer to finish charging. He testified there was not a flower arrangement on the table, only a small vase, and that he did not hide the pistol. He said that Morgan then left for the convenience store and brought back a 40 ounce bottle of beer for appellant.

{¶ 27} Appellant testified he was not aware that Polan was coming to Apartment B; if he had known, he would not have been there at that time. He also testified he did not witness Morgan take a phone call, and he did not make any threats regarding Polan. Appellant stated Polan knocked on the door, the dog followed Morgan to answer the

5

door, then "the MF thing went on about the dog." Morgan stepped back and said the dog belonged to appellant; Polan then threatened "to kick its ass out of the building." Appellant testified that, in response to the threat against his dog, "I just stood up and I got my pistol and pulled the door open a little farther so he could see me. And I pointed the pistol in his direction" in order to "maybe rattle him a little bit." Appellant testified he did not cock the pistol, did not have his finger on the trigger, and did not shoot at Polan. He described how the gunshot occurred:

There was a struggle over the pistol. [Polan] immediately knocked it to the side pulling, I grabbed hold of and as I was pulling—it's a single action. It doesn't take a lot of pressure. When you pull the hammer back, it has to go all the way back for the trigger but if it doesn't go all the way back, if it's just back far enough when the hammer is released by hand or whatever reason, it only takes a little pressure to get a percussion cap to set the pistol off. That is why it went around [Polan] and went into the door because he had had it to the side.

{¶ 28} Appellant then testified that he was standing only three feet away from Polan when he initially pointed the pistol at him. Appellant also testified that he had been trained with firearms in the army, including pistols, and that he knows how to handle and shoot them. He said if he wanted to shoot him, there was "zero" likelihood he would have missed. Appellant explained that he eventually let go of the pistol during the struggle with Polan because he did not want the same thing, i.e. an accidental gunshot, to happen again. He followed Polan outside, asking for his gun back, but Polan pulled out of the driveway with the gun.

{¶ 29} Appellant testified that while he was sitting in the back of the police cruiser, he told Officer Stephenson it was an accident, but he had not been Mirandized. He further testified he did not know the gun had been stolen and that he had never looked very closely at the gun to determine whether it was loaded. He testified that the police gave his apartment keys to Morgan and many items were missing when he returned after making bail. He made a police report accusing both Morgan and Stiffler of theft.

*State v. Thompson*, 71 N.E.3d 1219, 1221-1225 (Ohio App. 11th Dist. 2016).

## II. Procedural History

In July of 2014, a Trumbull County Grand Jury indicted Thompson on (1) one count of felonious assault in violation of Ohio Rev. Code §§ 2903.11(A)(2) & (D)(1)(a), including a firearm specification, and (2) one count of receiving stolen property in violation of Ohio Rev. Code § 2913.51(A) & (C). (Doc. No. 9-1 at pp. 2-4.) Thompson pleaded not guilty and his case proceeded

6

to jury trial. (*Id.* at p. 38.) The jury found Thompson guilty of felonious assault, including the firearm specification, but not guilty of receiving stolen property. (*Id*. at pp. 5, 38.) On July 10, 2015, the trial court sentenced Thompson to an aggregate term of eight years incarceration. (*Id*. at pp. 5-7.)

On August 7, 2015, Thompson, through appellate counsel, filed a timely notice of appeal to the Eleventh District Court of Appeals (hereinafter "state appellate court"). (*Id.* at pp. 8-10.) In his appellate brief, filed on January 12, 2016, Thompson raised the following sole assignment of error:

1. The Appellant's convictions are against the manifest weight of the evidence.

(*Id*. at pp. 14-24.) The State filed a brief in opposition. (*Id*. at pp. 25-35.) On September 30, 2016, the state appellate court found Thompson's argument was without merit and affirmed the judgment of the trial court, with one judge dissenting. (*Id.* at pp. 37-57.)

Thompson, through counsel, timely appealed to the Supreme Court of Ohio. (*Id*. at pp. 58-59.) In his memorandum in support of jurisdiction, Thompson asserted the following proposition of law:

1. In reviewing whether or not a criminal conviction is against the manifest weight of the evidence, the reviewing court need not give total deference to the findings of trier of fact.

(*Id*. at pp. 60-70.) On June 21, 2017, the Supreme Court of Ohio declined to accept jurisdiction. (*Id.* at p. 93.)

On September 10, 2018,[1] Thompson filed a *pro se* Petition for Writ of Habeas Corpus in this Court and asserted the following ground for relief:

---

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until September 13, 2018, Thompson states that he placed it in the prison mailing system on September 10, 2018. (Doc. No. 1 at 12.) Thus, the Court will consider the Petition as filed on September 10, 2018.

7

> I.  In reviewing whether or not a criminal conviction is against the manifest weight of the evidence, the reviewing court need not give deference to [the] finding of the trier of fact, thus opposing due process, 14th [Amendment] to the Constitution.
>
> Supporting Facts:  The evidence presented is vague, uncertain, conflicting, and fragmentary.

(Doc. No.1 at p. 6.)  Thompson filed a brief in support of his Petition on September 27, 2018.  (Doc. No. 4.)  Therein, he again argued that his conviction was against the manifest weight of the evidence.  (*Id.*)  He also referenced sufficiency of the evidence, noting that "[a] claim that a conviction is supported by INSUFFICIENT EVIDENCE states a claim for habeas corpus relief, under the due process clause, set forth in *Jackson v. Virginia*, 443 US 307."  (*Id.* at p. 3) (capitals in original).

Respondent filed a Return on April 16, 2019, in which he argued that the Petition should be dismissed because Thompson's manifest weight of the evidence claim was not cognizable on federal habeas review.  (Doc. No. 9.)  Thompson thereafter filed a Traverse and Application for Default Judgment.  (Doc. Nos. 10, 11.)

On April 17, 2020, the Magistrate Judge issued a Report & Recommendation ("R&R") that both the Petition and Application for Default Judgment be denied.  (Doc. No. 12.)  An Amended R&R was filed later that same day, which contained the same recommendation.  (Doc. No. 13.)  In particular, the Magistrate Judge recommended that the Petition be denied because Thompson's manifest weight of the evidence claim was not cognizable in federal habeas review.  (*Id.*)  The Magistrate Judge did not construe the Petition as raising a sufficiency of the evidence claim and, thus, did not consider whether Thompson's felonious assault conviction was supported by sufficient evidence under *Jackson v. Virginia*, 443 U.S. 307 (1997).

On May 7, 2020, Thompson filed a "Motion to Strike Magistrate Judge Report & Recommendation due to Untimeliness pursuant to Local Rule 16.3.1(h)(1)" (Doc. No. 14.) Therein, Thompson argued that the Amended R&R filed by Magistrate Judge Limbert on April 17, 2020 should be stricken as untimely. (*Id.*) He also raised several arguments in support of his assertion that the state trial court erred in his underlying criminal proceedings. (*Id*. at pp. 2-4.) Respondent did not file a response to Thompson's Motion.

On July 29, 2020, the Court denied Thompson's Motion to Strike the Amended Report & Recommendation as untimely. (Doc. No. 15.) However, the Court also stated as follows:

> The Court notes that it will address the substantive arguments raised in Petitioner's Motion regarding his underlying state court conviction and sentence, in connection with its review of the Magistrate Judge's Amended R&R. If Petitioner wishes to file formal "Objections" to the Amended R&R, he must do so by no later than 14 days from the date of this Order; i.e., by no later than August 12, 2020.

*Id.* at p. 2. The record reflects that Thompson did not thereafter file formal "Objections" to the Amended R&R.

## II. Standard of Review

Parties must file any objections to a report & recommendation within fourteen days of service. Fed. R. Civ. P. 72(b)(2). Failure to object within this time waives a party's right to appeal the district court's judgment. *See Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947, 949-950 (6th Cir. 1981).

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*. Fed. R. Civ. P. 72(b)(3). Specifically, a district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.* "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, 2006 WL 903199 at * 7 (N.D. Ohio April 7, 2006) (citing *Walters*, 638 F.2d at 949–50).

**III.    Analysis**

As noted above, Thompson failed to file formal "Objections" to the Amended Report & Recommendation. However, in his Motion to Strike, Thompson raises several substantive arguments, which the Court indicated that it would consider as Objections. (Doc. No. 15.) Thompson's arguments are as follows.

Thompson first asserts that the state trial court inappropriately used an antique firearm to enhance his sentence, which he argues is contrary to Ohio Rev. Code § 2941.1423. (Doc. No. 14 at p. 3.) He appears to acknowledge that this claim was not raised on appeal and is procedurally defaulted, but argues that the failure of his appellate counsel to raise this argument on direct appeal constitutes "cause" to excuse the default. (*Id.*) Thompson also appears to assert freestanding claims of ineffective assistance of trial and appellate counsel in failing to raise this argument in the proceedings below. (*Id.*) Finally, Thompson argues generally that his conviction for felonious assault is against the manifest weight of the evidence. (*Id.* at p. 4.) He asserts that "this court has a duty not to turn a blind eye to this manifest injustice and address ineffective assistance of counsel, plain error by counsel and the courts, joined with the manifest weight of the evidence at trial, is overwhelming evidence to grant Petitioner this Writ." (*Id.*)

The Court first rejects Thompson's arguments that the state trial court inappropriately used an antique firearm to enhance his sentence, and that his trial and appellate counsel were ineffective for failing to raise this argument during the state court proceedings below. Thompson's Petition does not raise any federal habeas claims relating to his conviction on the firearm specification, either in the form of trial court error, ineffective assistance of trial counsel, or ineffective assistance of appellate counsel. As these claims are not presented in his habeas Petition, they are not presently before this Court and are rejected on that basis.[2]

Thompson also argues generally that his conviction is against the manifest weight of the evidence. (Doc. No. 14 at p. 4.) Although he does not specifically object to the Magistrate Judge's conclusion that the Petition should be dismissed because his manifest weight of the evidence claim is non-cognizable, the Court will liberally construe Thompson's *pro se* filing as raising this argument.

For the following reasons, the Court declines to accept the Magistrate Judge's recommendation that Thompson's Petition be dismissed at this time. In *Nash v. Eberlin*, 258 Fed. Appx. 761 (6th Cir. 2007), the Sixth Circuit construed a habeas petition raising only a manifest weight of the evidence claim as a raising a sufficiency of the evidence claim under *Jackson v. Virginia*, 443 U.S. 307 (1979). In that case, Nash was convicted in state court of felonious assault, after he had an argument with his wife and retrieved a loaded handgun from another room in the house. *Id.* at 762-763. During a struggle between Nash and his son, the gun discharged twice, once into the ground

---

[2] The Court notes that, even if Thompson had included these claims in his federal habeas Petition, they would be subject to dismissal as procedurally defaulted. Specifically, Thompson failed to raise any of these claims in the state court proceedings below and there is no state court remedy available for him to do so now. Further, Thompson cannot establish cause to excuse the default of these claims. Although he suggests that the default should be excused on the basis of ineffective assistance of appellate counsel, Thompson failed to file an App. R. 26(B) Application in state court and the time for doing so has well expired. Thus, Thompson's ineffective assistance of appellate counsel claim is itself defaulted and may not serve to excuse the default of his trial court error and/or ineffective assistance of trial counsel claims. *See Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002); *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012).

and once into a wall. *Id.* Nash's wife was not injured. *Id.* Nash was charged with felonious assault and convicted after a jury trial. *Id.* at 763. On direct appeal, Nash argued that his conviction was against the manifest weight of the evidence. *Id.* The state appellate court rejected this argument, with one judge dissenting. *Id.* at 764. The Ohio Supreme Court denied leave to appeal.

Nash then filed a *pro se* habeas petition in federal court, in which he raised the following sole ground for relief: "Felonious assault conviction was against the manifest weight of the evidence." *Id.* The district court granted the petition, after liberally construing Nash's manifest weight of the evidence claim as a sufficiency of the evidence claim. *Id.* On appeal, the Sixth Circuit remanded because the district court failed to review the entire trial transcript in resolving this claim. *Id.* On remand, the district court reviewed the trial transcript and again granted Nash's petition, finding that "a rational trier of fact could not conclude beyond a reasonable doubt that Nash knowingly caused or attempted to cause physical harm to his wife because there is no evidence that he pointed the gun at his wife or threatened her directly." *Id.*

This time, the Sixth Circuit affirmed. The court first found that Nash's petition was properly construed as asserting a sufficiency of the evidence claim, explaining as follows:

> Nash's habeas petition actually argues that his conviction was against the manifest weight of the evidence, not that it was supported by insufficient evidence. Even though a federal court is only allowed to review issues of federal law in a habeas proceeding, see 28 U.S.C. § 2254(a), and a manifest-weight-of-the-evidence argument is a state-law argument, we interpret Nash's argument to be a sufficiency of the evidence claim because the law calls for the liberal and active construction of *pro se* claims for relief "to encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir.1985) (quoting *White v. Wyrick,* 530 F.2d 818, 819 (8th Cir.1976)).

12

*Id.* at fn 4. The court then concluded that Nash's sufficiency of the evidence claim was not procedurally defaulted, despite the fact that it was never expressly raised during state court proceedings:

> As a threshold matter, we first determine that Nash did not procedurally default on his sufficiency of the evidence claim by not presenting it to the Ohio state courts. [fn omitted] Under normal circumstances, habeas relief can only be sought for claims that have been ruled upon in state court. *See* 28 U.S.C. § 2254(b)(1)(A). On appeal to the Fifth Circuit Court of Appeals of Ohio, Nash argued that his conviction for felonious assault was against the manifest weight of the evidence, but he did not literally argue that there was insufficient evidence to support his conviction. **Nevertheless, the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence.** The Ohio Court of Appeals, for instance, has explained that " '[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.' Thus, a determination that a conviction is supported by the weight [of the] evidence will also be dispositive of the issue of sufficiency." *State v. Lee*, 158 Ohio App.3d 129, 814 N.E.2d 112, 115 (2004) (citations omitted). Therefore, the district court properly entertained Nash's sufficiency of the evidence claim because it has been effectively presented to the Ohio courts and was decided by the Ohio Court of Appeals.

*Id.* at 764-765 (emphasis added). After examining the state appellate court's decision, the Sixth Circuit found that "it was objectively unreasonable for the Ohio Court of Appeals to find that a rational trier of fact could be convinced beyond a reasonable doubt that Nash knowingly attempted to cause physical harm to anyone through the use of a deadly weapon." *Id.* at 766.

Relying on *Nash,* district courts have frequently construed *pro se* habeas petitions raising manifest weight of the evidence claims as asserting sufficiency of the evidence claims. *See, e.g., Bryant v. Turner,* 2016 WL 5930919 at * 4-5 (S.D. Oct. 12, 2016) (collecting cases); *Owens v. Miller,* 2016 WL 944156 at * 9 (N.D. Ohio Feb. 1, 2016); *Rojas v. Warden, Ross Corr. Inst.*, 2015 WL 631183 at * 4 (N.D. Ohio Feb. 12, 2015); *Taylor v. Brunsman*, 2014 WL 4113320 at * 14 (N.D. Ohio

13

Aug. 20, 2014); *Hill v. Sheldon*, 2014 WL 700024 at * 3 (N.D. Ohio Feb. 21, 2014); *Hughes v. Warden, Chillicothe Corr. Inst.,* 2011 WL 1980037 at * 4 (S.D. Ohio Apr. 27, 2011*). See also Hoffman v. Lazaroff*, 2018 WL 5849894 at * 3 (6th Cir. Sept. 17, 2018) (stating that "courts often consider a manifest-weight-of-the-evidence claim in a § 2254 petition to allege an insufficient-evidence claim, particularly when, as here, the petitioner is *pro se*").

Applying *Nash* herein, the Court finds that Thompson's *pro se* Petition should be liberally construed as raising a sufficiency of the evidence claim under *Jackson, supra*. While Thompson styled his claim as a manifest weight of the evidence claim, the Court notes that Thompson expressly references sufficiency of the evidence and *Jackson* in his Brief in Support of his Petition. (Doc. No. 4 at p. 3.) Construing Thompson's Petition liberally to include a sufficiency claim is consistent with Circuit precedent and appropriate under the circumstances presented, particularly given the parallels between *Nash* and the instant action.

Accordingly, the Court respectfully declines to accept the Magistrate Judge's recommendation that Thompson's Petition be dismissed at this time. Rather, the Court re-refers this matter to the Magistrate Judge with instructions to consider Thompson's manifest weight of the evidence claim as asserting a sufficiency of the evidence claim under *Jackson, supra*. In so doing, the Court should order Respondent to supplement the state court record with the transcript of Thompson's trial, and order supplemental briefing on this issue by both parties.

**IV.    Conclusion**

For the foregoing reasons, the Court declines to accept the Magistrate Judge's Amended Report & Recommendation (Doc. No. 13.) This matter is re-referred to the Magistrate Judge with instructions to consider Thompson's manifest weight of the evidence claim as asserting a sufficiency

of the evidence claim under *Jackson, supra*.  In so doing, the Court should order Respondent to supplement the state court record with the transcript of Thompson's trial, and order supplemental briefing on this issue by both parties.

**IT IS SO ORDERED.**


Date:  September 30, 2020

      *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE